UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

FILED
AUG - 2 2024
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

UNITED STATES OF AMERICA,

*ex rel.* VERITY INVESTIGATIONS, LLC,

　　　*Plaintiff/Relator*,

v.

BOTH MANAGEMENT SERVICES, INC.,

　　　*Defendant.*

Case No. 2:24cv474

ORIGINAL COMPLAINT FOR VIOLATIONS OF THE FEDERAL FALSE CLAIMS ACT, 31 U.S.C. § 3729 *et seq.*

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

DO NOT PLACE IN PRESS BOX

**Jury Trial Demanded**

## *QUI TAM* COMPLAINT

### I. INTRODUCTION

1. This is a *qui tam* case, filed on behalf of the federal government, seeking to recover $310,794 (plus mandatory trebling) that Defendant wrongfully obtained in the form of a federal guaranteed loan by falsely certifying that it had fewer than 300 employees. That loan was later forgiven, and the federal government paid the bill.

2. The loan in question was provided by the Small Business Administration's ("SBA's") Paycheck Protection Program ("PPP"). The PPP was created by Congress near the start of the COVID-19 epidemic in the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") in 2020, and then received additional funding ($284 billion) in December 2020 in the "Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act."[1] 15 U.S.C. § 636(a)(37).

3. In early 2021, SBA authorized a second series of PPP loans, widely referred to as "Second Draw" PPP loans. This case involves a false application for a Second Draw PPP loan.

4. The Second Draw PPP loans were made available only to "small" businesses. The SBA established a clear, bright-line rule for who counted as "small." Applicants were required to certify, in their application, that they (both the applicant and its affiliates) collectively employed 300 or fewer persons.[2]

5. Defendant falsely certified to the SBA that it had 292 employees. As a direct result of that false statement, Defendant obtained a Second Draw PPP loan of $310,794, which was later forgiven.

---

[1] SBA INSPECTOR GENERAL INSPECTION REPORT, The Small Business Administration's Implementation of Recommended Controls and the Economic Aid Act (Aug. 12, 2021), https://www.sba.gov/sites/sbagov/files/2021-08/SBA%20OIG%20Report%2021-19.pdf.
[2] SMALL BUSINESS ADMINISTRATION, Second Draw PPP loan, https://www.sba.gov/funding-programs/loans/covid-19-relief-options/paycheck-protection-program/second-draw-ppp-loan.

2

6. Relator is an outside investigative company that detected Defendant's fraud by reviewing the Form 5500 that Defendant's employees' 401(k) plan filed with the Department of Labor. Those forms indicated that the 401(k) plan had more than 300 "active participants" in each of 2019, 2020, and 2021. Because an "active participant" is an employee, these forms' representations to the Department of Labor give the lie to Defendant's false statement to the SBA that it employed fewer than 300 persons.

## II. THE PARTIES

7. Plaintiff Verity Investigations LLC ("Relator") is an investigative firm formed by two professionals with widespread experience in detecting and reporting fraud on the U.S. public fisc.

8. Defendant Both Management Services, Inc. ("Both Management") is a Virginia corporation with its principal place of business in Virginia Beach, Virginia.

## III. JURISDICTION AND VENUE

9. This action arises under the laws of the United States to redress violations of the Federal False Claims Act, 31 U.S.C. §§ 3729–33 ("FCA").

10. Subject-matter jurisdiction is conferred by 28 U.S.C. §§ 1331, 1345.

11. Venue is proper, and this Court has personal jurisdiction over Defendant, because Defendant is "found" in this District. 31 U.S.C. § 3732(a).

## IV. THE FALSE CLAIMS ACT

12. The FCA is the primary civil remedial statute designed to deter fraud upon the United States. Its purpose is to "enhance the Government's ability to recover losses sustained as a result of fraud against the Government." S. Rep. No. 99-345, at 1 (July 28, 1986).

13. A defendant violates the FCA when the defendant "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A).

3

14. Under the FCA, a claim includes a request for money. 31 U.S.C. § 3729(b)(2). A claim is "false or fraudulent" under the FCA if the entity or person submitting the claim was not entitled to payment.

15. In 2009, Congress amended the FCA through the Fraud Enforcement and Recovery Act of 2009 ("FERA"), Pub. L. No. 111-21 (May 20, 2009), making a defendant liable under the FCA when the defendant "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(B).

16. Under the FCA, the terms "knowing" and "knowingly" mean that the defendant "(i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A).

17. No proof of specific intent to defraud the Government is required to show that a defendant acted knowingly under the FCA. 31 U.S.C. § 3729(b)(1)(B).

18. The terms "knowing," "knowingly," "knowledge," "knows," and "knew," as used in this Complaint, have the meaning ascribed to them by the FCA.

19. The FCA defines the term "material" as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4).

20. The FCA broadly defines a "claim" as "any request or demand . . . for money or property" that: "(i) is presented to an officer, employee, or agent of the United States," or "(ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government (I) provides or has provided any portion of the money or property requested or

demanded; or (II) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded." 31 U.S.C. § 3729(b)(2).

21. The FCA imposes treble damages plus a civil penalty for each false claim. *See* 31 U.S.C. § 3729(a)(1).

22. The minimum and maximum civil penalty amounts are adjusted for inflation each successive year under the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, Pub. L. No. 114-74, § 701, 129 Stat. 584, 599–601 (2015). *See* 28 C.F.R. § 85.5 (identifying applicable inflation adjustments on an annual basis); 31 U.S.C. § 3729(a)(1).

23. As of February 12, 2024, courts must assess a civil penalty of no less than $13,946 and no more than $27,894 per claim for FCA violations that occurred after November 2, 2015. *See* 28 C.F.R. § 85.5 Table 1.

24. False statements made in a loan application to a third-party lender qualify as "false claims" to the government where, as here, the loan is guaranteed by the federal government and the federal government later repays the lender. *See United States v. Van Oosterhout*, 96 F.3d 1491, 1494 (D.C. Cir. 1996).

V. NO "PUBLIC DISCLOSURE" AND RELATOR IS AN ORIGINAL SOURCE

25. On information and belief, no "public disclosure" has been made of Defendant's false statement and fraud detailed herein. 31 U.S.C. § 3730(e)(4)(A).

26. On information and belief, Defendant's fraudulent transactions have not been publicly disclosed in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party; in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or by the news media.

27. Even if there had been a "public disclosure," that would not matter in this case because Relator is an "original source of the information" set forth in this complaint. 31 U.S.C. § 3730(e)(4)(A).

28. Relator's knowledge is independent of and materially adds to any publicly disclosed aspects of the fraudulent transactions described herein. Among other things, Relator has "connected the dots" between (a) Defendant's Form 5500 disclosures and other statements, and (b) Defendant's false certification for the Second Draw PPP loan.

29. Prior to filing this action, Relator voluntarily provided the Government with this complaint and all material evidence in Relator's possession relating to the fraudulent transactions.

## VI. THE SECOND DRAW PPP LOAN PROGRAM

30. To be eligible for a Second Draw PPP loan, borrowers were required to meet three criteria: (1) have "[p]reviously received a First Draw PPP Loan," (2) "[have] no more than 300 employees," and (3) be able to "demonstrate at least a 25% reduction in gross receipts between comparable quarters in 2019 and 2020."[3] 15 U.S.C. § 636(a)(37)(A)(iv).

31. The SBA's website explained the 300-limit to borrowers. This was explained in an overview page of the website[4] and in the online "Frequently Asked Questions" document available on the website.[5]

32. The SBA's FAQ document stated that this limit was "narrower" than the prior 500-employee limit for the earlier First Draw PPP loans.[6]

---

[3] SMALL BUSINESS ADMINISTRATION, Second Draw PPP loan, https://www.sba.gov/funding-programs/loans/covid-19-relief-options/paycheck-protection-program/second-draw-ppp-loan.
[4] SMALL BUSINESS ADMINISTRATION, Second Draw PPP loan, https://perma.cc/R74F-68UQ?type=image (as of March 2021).
[5] SMALL BUSINESS ADMINISTRATION, FAQ for PPP Borrowers and Lenders, https://perma.cc/5Y8K-CR5Y (as of March 2021).
[6] SMALL BUSINESS ADMINISTRATION, FAQ for PPP Borrowers and Lenders, at 29, https://www.sba.gov/document/support-faq-ppp-borrowers-lenders.

33. The SBA's FAQ document warned borrowers that, unlike with the First Draw PPP loans, borrowers would not be allowed to qualify using "SBA's [other] established size standards (either revenue-based or employee-based) or the alternative size standard."[7]

34. The SBA's FAQ stated that "borrowers" were "required to apply SBA's affiliation rules under 13 C.F.R. 121.301(f)."[8]

35. That regulation—13 C.F.R. § 121.301(f)—stated that when counting "employees," an applicant must include the employees of "all of its domestic and foreign affiliates." 13 C.F.R. § 121.301(f)(6).[9]

36. That regulation defined affiliation broadly:

a. Affiliation includes "affiliation based on ownership." "For determining affiliation based on equity ownership, a concern is an affiliate of an individual, concern, or entity that owns or has the power to control more than 50 percent of the concern's voting equity. If no individual, concern, or entity is found to control, SBA will deem the Board of Directors or President or Chief Executive Officer (CEO) (or other officers, managing members, or partners who control the management of the concern) to be in control of the concern. SBA will deem a minority shareholder to be in control, if that individual or entity has the ability, under the concern's charter, by-laws, or shareholder's agreement, to prevent a quorum or otherwise block action by the board of directors or shareholders." *See* 13 C.F.R. § 121.301(f)(1).[10]

b. Affiliation may also arise "under stock options, convertible securities, and agreements to merge." *See* 13 C.F.R. § 121.301(f)(2).[11]

---

[7] SMALL BUSINESS ADMINISTRATION, FAQ for PPP Borrowers and Lenders, at 29, https://www.sba.gov/document/support-faq-ppp-borrowers-lenders.
[8] SMALL BUSINESS ADMINISTRATION, FAQ for PPP Borrowers and Lenders, at 3, https://www.sba.gov/document/support-faq-ppp-borrowers-lenders.
[9] 13 C.F.R. § 121.301(f) (as of Dec. 14, 2020).
[10] 13 C.F.R. § 121.301(f) (as of Dec. 14, 2020).
[11] 13 C.F.R. § 121.301(f) (as of Dec. 14, 2020).

7

c. Affiliation may arise "based on management:" "Affiliation arises where the CEO or President of the applicant concern (or other officers, managing members, or partners who control the management of the concern) also controls the management of one or more other concerns. Affiliation also arises where a single individual, concern, or entity that controls the Board of Directors or management of one concern also controls the Board of Directors or management of one of more other concerns. Affiliation also arises where a single individual, concern or entity controls the management of the applicant concern through a management agreement." *See* 13 C.F.R. § 121.301(f)(3).[12]

d. Affiliation may arise "based on identity of interest:" "Affiliation arises when there is an identity of interest between close relatives, as defined in 13 CFR 120.10, with identical or substantially identical business or economic interests (such as where the close relatives operate concerns in the same or similar industry in the same geographic area). Where SBA determines that interests should be aggregated, an individual or firm may rebut that determination with evidence showing that the interests deemed to be one are in fact separate." *See* 13 C.F.R. § 121.301(f)(4).[13]

e. Affiliation may arise "based on franchise and license agreements:" "The restraints imposed on a franchisee or licensee by its franchise or license agreement generally will not be considered in determining whether the franchisor or licensor is affiliated with an applicant franchisee or licensee provided the applicant franchisee or licensee has the right to profit from its efforts and bears the risk of loss commensurate with ownership. SBA will only consider the franchise or license agreements of the applicant concern." *See* 13 C.F.R. § 121.301(f)(5).[14]

---

[12] 13 C.F.R. § 121.301(f) (as of Dec. 14, 2020).
[13] 13 C.F.R. § 121.301(f) (as of Dec. 14, 2020).
[14] 13 C.F.R. § 121.301(f) (as of Dec. 14, 2020).

37. The SBA required borrowers to submit a Borrower Application Form (SBA Form 2483-SD) to a federally insured bank or similar credit institution, which would process the loan application and fund the loan.

38. The SBA Form 2483-SD required the borrower to state the "Number of Employees (including affiliates, if applicable)."

39. The SBA Form 2483-SD then required the applicant's authorized representative to certify eligibility by signing a statement that "[t]he Applicant, together with its affiliates (if applicable) . . . employs no more than 300 employees."

40. The SBA Form 2483-SD also required the applicant's authorized representative to initial to "certify that the information provided in this application . . . is true and accurate," and to acknowledge "that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 U.S.C. 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000 . . . ."

41. The SBA guaranteed 100% of the outstanding balance of Defendant's Second Draw PPP loan. The guarantee was backed by the full faith and credit of the United States. 15 U.S.C. § 636(a)(2)(F).

## VII. DEFENDANT FALSELY CERTIFIED TO THE SBA ITS COMPLIANCE WITH THE SECOND DRAW PPP LOAN SIZE REQUIREMENTS

### A. BACKGROUND

42. Upon information and belief, Defendant Both Management Services, Inc. ("Both Management") is a corporation registered in Virginia[15] and headquartered at

---

[15] Virginia, State Corporation Commission, Both Management Services, Inc, https://cis.scc.virginia.gov/EntitySearch/BusinessInformation?businessId=112528&source=FromEntityResult&is Series%20=%20false (for Entity ID 04836375).

1453 Kempsville Rd, Suite 107, Virginia Beach, VA 23464-7319.[16]

43. Both Management can be validly served with process at 1453 Kempsville Road, Suite 107, Virginia Beach, VA 23462.[17]

44. Both Management provides general or specialized management services on a day-to-day basis and on a contract or fee basis.[18]

45. Both, Inc. ("Both") is a corporation registered in Virginia at 1453 Kempsville Road, Suite 107, Virginia Beach, Virginia 23464.[19]

46. Both is a restaurants company that does business as Golden Corral.[20]

47. Upon information and belief, Both Management provides management services to the following entities: GC of Ruther Glen LLC,[21] GC of Waldorf LLC,[22] GC of Chesapeake Inc,[23] GC of Virginia Beach LLC,[24] GC of Williamsburg LLC,[25] GC of Arundel Mills LLC,[26] GC of

---

[16] D&B Hoovers, Both Management Services, Inc.
[17] Virginia, State Corporation Commission, Both Management Services, Inc, https://cis.scc.virginia.gov/EntitySearch/BusinessInformation?businessId=112528&source=FromEntityResult&isSeries%20=%20false (for Entity ID 04836375).
[18] D&B Hoovers, Both Management Services, Inc.
[19] Virginia, State Corporation Commission, Both, Inc, https://cis.scc.virginia.gov/EntitySearch/BusinessInformation?businessId=112528&source=FromEntityResult&isSeries%20=%20false (for Entity ID 03778248).
[20] *See* https://both-inc-dba-golden-corral.careerplug.com/account; https://www.wayup.com/i-j-BOTH-Inc-dba-Golden-Corral-718568903830810/; Form 5500, Both, Inc. (2020); Form 5500, Both, Inc. (2021).
[21] PPP Loan Data, GC of Ruther Glen LLC, https://www.federalpay.org/paycheck-protection-program/gc-of-ruther-glen-llc-virginia-beach-va.
[22] PPP Loan Data, GC of Waldorf LLC, https://www.federalpay.org/paycheck-protection-program/gc-of-waldorf-llc-virginia-beach-va.
[23] PPP Loan Data, GC of Chesapeake Inc, https://www.federalpay.org/paycheck-protection-program/gc-of-chesapeake-inc-virginia-beach-va.
[24] PPP Loan Data, GC of Virginia Beach LLC, https://www.federalpay.org/paycheck-protection-program/gc-of-virginia-beach-llc-virginia-beach-va#google_vignette.
[25] PPP Loan Data, GC of Williamsburg LLC, https://www.federalpay.org/paycheck-protection-program/gc-of-williamsburg-llc-virginia-beach-va.
[26] PPP Loan Data, GC of Arundel Mills LLC, https://www.federalpay.org/paycheck-protection-program/gc-of-arundel-mills-llc-virginia-beach-va.

Capital Centre LLC,[27] GC of Charleston LLC,[28] GC of Chesapeake Square LLC,[29] GC of Fredericksburg LLC,[30] GC of Fullerton LLC,[31] GC of Glen Burnie LLC,[32] GC of Hagerstown LLC,[33] GC of Hampton LLC,[34] GC of Lexington Park LLC,[35] GC of Manassas LLC,[36] and GC of Newport News LLC.[37] Collectively, the LLC entities listed in this paragraph are referred to herein as the "Golden Corral Restaurants."

48. The Golden Corral Restaurants operate buffet and grill restaurants.[38]

### B. BOTH MANAGEMENT, BOTH, AND THE GOLDEN CORRAL RESTAURANTS ARE AFFILIATES

49. On information and belief, Both and the Golden Corral Restaurants are affiliates of Defendant Both Management for purposes of the PPP Loan program under one or more of the alternative definitions provided in 13 C.F.R. § 121.301(f).

50. Both Management, Both, and the Golden Corral Restaurants share the same headquarters at 1453 Kempsville Road, Suite 107, Virginia Beach, VA 23464.

51. Houston Odom, Jr. is the president of Both Management and Both.

---

[27] PPP Loan Data, GC of Capital Centre LLC, https://www.federalpay.org/paycheck-protection-program/gc-of-capital-centre-llc-virginia-beach-va.
[28] PPP Loan Data, GC of Charleston LLC, https://www.federalpay.org/paycheck-protection-program/gc-of-charleston-llc-virginia-beach-va#google_vignette.
[29] PPP Loan Data, GC of Chesapeake Square, LLC, https://www.federalpay.org/paycheck-protection-program/gc-of-chesapeake-square-llc-virginia-beach-va.
[30] PPP Loan Data, GC of Fredericksburg LLC, https://www.federalpay.org/paycheck-protection-program/gc-of-fredericksburg-llc-virginia-beach-va.
[31] PPP Loan Data, GC of Fullerton, LLC, https://www.federalpay.org/paycheck-protection-program/gc-of-fullerton-llc-virginia-beach-va.
[32] PPP Loan Data, GC of Glen Burnie, LLC, https://www.federalpay.org/paycheck-protection-program/gc-of-glen-burnie-llc-virginia-beach-va.
[33] PPP Loan Data, GC of Hagerstown LLC, https://www.federalpay.org/paycheck-protection-program/gc-of-hagerstown-llc-virginia-beach-va.
[34] PPP Loan Data, GC of Hampton, LLC, https://www.federalpay.org/paycheck-protection-program/gc-of-hampton-llc-virginia-beach-va.
[35] PPP Loan Data, GC of Lexington Park LLC, https://www.federalpay.org/paycheck-protection-program/gc-of-lexington-park-llc-virginia-beach-va.
[36] PPP Loan Data, GC of Manassas, LLC, https://www.federalpay.org/paycheck-protection-program/gc-of-manassas-llc-virginia-beach-va.
[37] PPP Loan Data, GC of Newport News LLC, https://www.federalpay.org/paycheck-protection-program/gc-of-newport-news-llc-virginia-beach-va.
[38] Golden Corral, https://www.goldencorral.com/.

52. Houston Odom, Jr. is the registered agent for each of the Golden Corral Restaurants.

53. Upon information and belief, Houston Odom Jr. controls the management of Both Management, Both, and the Gold Corral Restaurants.

C. **FALSE STATEMENT TO OBTAIN SECOND DRAW PPP LOAN**

54. In 2020, Both Management submitted its Borrower Application form to apply for a First Draw PPP loan in the amount of $310,800.00.

55. On or about June 10, 2021, after Both Management applied and was approved for a Second Draw PPP loan, the U.S. government forgave 100% of Both Management's First Draw PPP Loan, including interest, in the amount of $314,408.70.

56. In 2021, Both Management submitted its Borrower Application form, SBA Form 2483-SD, to TowneBank in Portsmouth, Virginia to apply for a Second Draw PPP loan.

57. On its Form 2483-SD, Both Management listed its address as 1453 Kempsville Road, Suite 107, Virginia Beach, VA 23464-7319.

58. On its SBA Form 2483-SD, Both Management represented to the lender and to the U.S. government that it and its affiliates had 292 employees—narrowly under the 300-employee limit needed to be eligible to apply.

59. Both Management's SBA Form 2483-SD's representation regarding the total number of its and its affiliates' employees was false. Both Management and its affiliates had far more than 300 employees in each of 2019, 2020 and 2021.

60. Both Management deliberately ignored the fact that the total number of its and its affiliates' employees numbered in excess of the 300-employee limit for obtaining a Second Draw PPP loan. Both Management signed its false SBA Form 2483-SD with knowledge of, or reckless disregard for, the truth.

61. On or about January 27, 2021, Both Management was approved for a Second Draw PPP loan in the amount of $310,794.00 by lender TowneBank.

62. The U.S. government paid lender TowneBank a lender's processing fee of 5% of the $310,794.00 loan, in the amount of $15,539.70.[39]

63. On or about July 8, 2022, the U.S. government forgave 100% of Both Management's Second Draw PPP Loan, including interest, in the amount of $315,228.90.

### D. EVIDENCE OF MORE THAN 300 EMPLOYEES

64. Both maintained a 401(k) retirement plan for its employees in each of 2019, 2020 and 2021 (the "Both Employee Benefits Plan").

65. The Both Employee Benefits Plan was a "single employer" plan, meaning that it provided pension benefits solely to the employees of one employer.[40] That employer was Both.[41]

66. In 2019, 2020, and 2021 the Both Employee Benefits Plan had the following legal name: Both, Inc. 401(k) Plan.

67. Each year, the Both Employee Benefits Plan was required to file a Form 5500 with the U.S. Department of Labor. That form required the Both Employee Benefits Plan to state the "number of active participants" at the beginning and end of the plan year. Form 5500 instructed Both that "active participants" are "individuals who are currently in employment covered by the plan and who are earning or retaining credited service under the plan."[42]

---

[39] Paycheck Protection Program (PPP) Information Sheet: Lenders, https://home.treasury.gov/system/files/136/PPP%20Lender%20Information%20Fact%20Sheet.pdf.

[40] The plan's Forms 5500 for 2019, 2020, and 2021 all check the box in section A attesting that it was "a single-employer plan."

[41] The plan's Forms 5500 for 2019, 2020, and 2021 all list the "employer" as "Both, Inc." All three years' Forms 5500 also give the same Employer Identification Number. The address is listed as 1453 Kempsville Road, Suite 107, Virginia Beach, VA 23464. The Forms 5500 list a NAICS code of 722514 for Both.

[42] Instructions for Form 5500 (2021).

68. In 2019, the Both Employee Benefits Plan reported 802 active participants at the start and 726 active participants at the end of the year.[43]

69. In 2020, the Both Employee Benefits Plan reported 747 active participants at the start and 670 active participants at the end of the year.[44]

70. In 2021, the Both Employee Benefits Plan reported 520 active participants at the start and 445 active participants at the end of the year.[45]

71. Upon information and belief, the number of "active participants" reported in the Both Employee Benefits Plan excluded the total number of Defendant Both Management's employees.

72. On information and belief, Both Management's and its affiliates' payroll records from 2019, 2020, and 2021 will confirm what Both Management always knew—that it and its affiliates collectively employed well over 300 employees throughout the time period 2019–2021.

E. **BOTH MANAGEMENT DOES NOT QUALIFY FOR THE EXCEPTION TO THE 300-EMPLOYEE LIMIT THAT APPLIES TO COMPANIES WITH A 72 NAICS CODE**

73. In its SBA Form 2483-SD, a company must include "the employees of its domestic and foreign affiliates" in calculating its number of employees. *See* 13 C.F.R. § 121.106(b)(1). There is an exception to that rule for a company that has a North American Industry Classification System ("NAICS") code beginning with 72.

74. The NAICS codes beginning with 72 apply to the "Accommodation and Food Services" industry. This industry comprises establishments providing customers with lodging and/or preparing meals, snacks, and beverages for immediate consumption. The sector includes

---

[43] Form 5500, Both, Inc. (2019).
[44] Form 5500, Both, Inc. (2020).
[45] Form 5500, Both, Inc. (2021).

14

both accommodation and food services establishments because the two activities are often combined at the same establishment.[46]

75. The SBA's FAQ stated that a business may obtain a Second Draw PPP loan if "it is assigned a NAICS code beginning with 72" and has "no more than 300 employees per physical location" and meets "other eligibility criteria."[47]

76. The SBA's FAQ further clarified that the affiliate rules do not apply to any business that is assigned an NAICS code beginning with 72. The guidelines stated: "As a result, if each hotel or restaurant location owned by a parent business is a separate legal business entity, each hotel or restaurant location that employs not more than 500 employees (or 300 employees for a Second Draw PPP loan) is permitted to apply for a separate PPP loan provided it uses its unique EIN."[48]

77. Both and the Golden Corral Restaurants are assigned NAICS codes beginning with 72.

78. Many of the Golden Corral Restaurants (which Both Management provides services to) took advantage of the exception to the 300-employee limit. They applied for PPP loans and obtained millions of dollars that were later forgiven:

a. GC of Ruther Glen LLC (NAICS code 722514) $370,405 through TowneBank, which was approved in February 2021.

b. GC of Waldorf LLC (NAICS code 722514) received a PPP loan of $384,300 through TowneBank, which was approved in January 2021.

c. GC of Chesapeake Inc. (NAICS code 722514) received a PPP loan of $387,400 through TowneBank, which was approved in January 2021.

---

[46] See NAICS Code Description, 72 – Accommodation and Food Services, https://www.naics.com/naics-code-description/?code=72.

[47] SMALL BUSINESS ADMINISTRATION, FAQ for PPP Borrowers and Lenders, https://perma.cc/5Y8K-CR5Y (as of March 2021).

[48] SMALL BUSINESS ADMINISTRATION, FAQ for PPP Borrowers and Lenders, https://perma.cc/5Y8K-CR5Y (as of March 2021).

15

d. GC of Virginia Beach LLC (NAICS code 722514) received a PPP loan of $385,600 through TowneBank, which was approved in January 2021.

e. GC of Williamsburg LLC (NAICS code 722514) received a PPP loan of $284,600 through TowneBank, which was approved in April 2020.

f. GC of Arundel Mills LLC (NAICS code 722514) received a PPP loan of $394,400 through TowneBank, which was approved in April 2020.

g. GC of Capital Centre LLC (NAICS code 722514) received a PPP loan of $565,400 through TowneBank, which was approved in February 2021.

h. GC of Charleston LLC (NAICS code 722514) received a PPP loan of $442,844 through TowneBank, which was approved in February 2021.

i. GC of Chesapeake Square, LLC (NAICS code 722514) received a PPP loan of $217,800 through TowneBank, which was approved in April 2020.

j. GC of Fredericksburg LLC (NAICS code 722514) received a PPP loan of $412,800 through TowneBank, which was approved in January 2021.

k. GC of Fullerton, LLC (NAICS code 722514) received a PPP loan of $319,100 through TowneBank, which was approved in April 2020.

l. GC of Glen Burnie, LLC (NAICS code 722514) received a PPP loan of $282,000 through TowneBank, which was approved in April 2020.

m. GC of Hagerstown LLC (NAICS code 722514) received a PPP loan of $375,800 through TowneBank, which was approved in February 2021.

n. GC of Hampton, LLC (NAICS code 722514) received a PPP loan of $225,200 through TowneBank, which was approved in April 2020.

o. GC of Lexington Park, LLC (NAICS code 722514) received a PPP loan of $176,600 through TowneBank, which was approved in April 2020.

p. GC of Manassas, LLC (NAICS code 722514) received a PPP loan of $290,800 through TowneBank, which was approved in April 2020.

q. GC of Newport News LLC (NAICS code 722514) received a PPP loan received a PPP loan of $364,651 through TowneBank, which was approved in February 2021.

79. The Golden Corral Restaurants that received PPP loans each reported their number of employees on their First Draw PPP loan applications. Based on those statements, the Golden

Corral Restaurants collectively employed at least 931 individuals during the time period used for counting employees in their First Draw PPP loan applications.

80. Unlike Both and the Golden Corral Restaurants, Both Management has the NAICS code 561110.[49]

81. The NAICS code 56110 applies to the "Office Administrative Services" industry. This industry comprises establishments primarily engaged in providing a range of day-to-day office administrative services, such as financial planning; billing and recordkeeping; personnel; and physical distribution and logistics, for others on a contract or fee basis. These establishments do not provide operating staff to carry out the complete operations of a business.[50]

82. The SBA's FAQ clarified that, when applying for a Second Draw PPP loan, an entity *without* a 72 NAICS code must count employees of affiliates *with* 72 NAICS code.[51]

83. Both Management was thus required to count Both's and the Golden Corral Companies' employees when stating its and its affiliates' "Number of Employees" on SBA Form 2483-SD.

84. Both Management made a false statement on its SBA Form 2483-SD by stating that the total number of its and its affiliates' employees was only 292 when in fact the total number of its and its affiliates was far in excess of 300 as stated in the Forms 5500 cited above.

---

[49] D&B Hoovers, Both Management Services, Inc.
[50] *See* NAICS Code Description, 56110 – Office Administrative Services, https://www.naics.com/naics-code-description/?code=561110.
[51] SMALL BUSINESS ADMINISTRATION, FAQ for PPP Borrowers and Lenders, https://perma.cc/5Y8K-CR5Y (as of March 2021).

## FIRST CAUSE OF ACTION

### Submitting False Claims for Payment
### 31 U.S.C. § 3729(a)(1)(A)

85. Relator repeats, realleges, and incorporates the allegations set forth in the paragraphs above as though fully set forth herein.

86. Defendant violated 31 U.S.C. § 3729(a)(1)(A) by knowingly presenting and/or causing to be presented to the lender a claim for approval of a Second Draw PPP loan.

87. Defendant's knowingly false claim on its SBA Form 2483-SD was material to the lender's decision to issue the Second Draw PPP loan and was material to the SBA's decision to forgive that loan and repay the lender.

88. But for Defendant's knowingly false claim, the lender would not have issued the loan and the SBA would not have forgiven it.

89. The Second Draw PPP loan that Defendant obtained was money that was intended by the Government to be spent or used to advance the Government's program and interest in assisting qualified and eligible small businesses to survive the COVID-19 epidemic and to continue to employ their workers.

90. The Second Draw PPP loan that Defendant obtained was money that the Government effectively and in practice provided to the lender, by means of the Government's 100% guarantee to the lender of repayment by the Government in the case of default by the borrower.

91. The Government later reimbursed the lender 100% of the amount of Defendant's Second Draw PPP loan, with interest.

## SECOND CAUSE OF ACTION

### Creating a False Record or Statement Material to a False Claim
### 31 U.S.C. § 3729(a)(1)(B)

92. Relator repeats, realleges, and incorporates the allegations set forth in the paragraphs above as though fully set forth herein.

93. Defendant violated 31 U.S.C. § 3729(a)(1)(B) by knowingly making or causing to be made a false record and statement—namely, its SBA Form 2483-SD and its included certifications—to support a false claim submitted to the lender for approval of Second Draw PPP loan.

94. Defendant's knowingly false record and statement was material to the lender's decision to issue the Second Draw PPP loan and was material to the SBA's decision to forgive that loan and repay the lender.

95. But for Defendant's knowingly false record and statement, the lender would not have issued the loan and the SBA would not have forgiven it.

## PRAYER FOR RELIEF

**WHEREFORE,** Relator requests judgment against Defendant for: (i) three times the amount of damages that the United States has sustained (including the full amount of the forgiven Second Draw PPP loan and interest thereon, plus all processing fees paid by the Government); (ii) the maximum civil penalties allowed by law; (iii) an award to Relator for the maximum allowed under 31 U.S.C. § 3730(d); (iv) an award of attorney's fees, costs, and expenses; (v) interest as provided by law; and (vi) any other relief that this Court deems appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Relator hereby demands a trial by jury.

Date: July 31, 2024        Respectfully submitted,

_____
Alexander P. Faig
**MOORE, CHRISTOFF & SIDDIQUI, PLLC**
526 King Street, Suite 506
Alexandria, VA 22314
Telephone: (703) 535-7809
Facsimile: (571) 223-5234
afaig@moorechristoff.com

Stephen Shackelford, Jr. (*to seek pro hac vice*)
Steven M. Shepard (*to seek pro hac vice*)
**SUSMAN GODFREY L.L.P.**
One Manhattan West, 50th Floor
New York, NY 10001
Telephone: (212) 336-8330
Facsimile: (212) 336-8340
sshackelford@susmangodfrey.com
sshepard@susmangodfrey.com

*Attorneys for Relator Verity Investigations, LLC*